IN THE UNITED STATES DISTRICT COURT, FILED
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION       2006 FEB 21  P 1: 19

| | | |
|---|---|---|
| LUKE OWENS-BRAGG & PEGGY BRAGG | § § § | Civil action No. |
| Plaintiffs, | § | |
| | § | **COMPLAINT** |
| vs. | § | **and** |
| | § | **DEMAND FOR JURY TRIAL** |
| | | **SA06CA0168 OG** |
| DACRIE, INC, d/b/a INTERNATIONAL CREDIT CONSULTANTS, RAUL G. MACHUCA, & WESTERN SURETY CO. | § § | |
| Defendants | § | (Violations of the Credit Repair |
| | § | Organizations Act) |

### Preliminary Statement

1.      Plaintiffs, Luke Owens-Bragg and Peggy Bragg, bring this action under the Credit Repair Organizations Act, 15 U.S.C. § 1679, et seq. ("CROA"), under the Texas Credit Service Organizations Act, Tex. Fin. Code § 393.001, et seq. ("TCSOA"), the Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.01 et. seq. ("DTPA") and Texas Common Law to obtain actual damages, punitive damages, statutory damages, common law damages, declaratory relief, and other relief for the Defendant's violations of CROA, TCSOA, DTPA, and Texas common law.

2.      Defendants, Dacrie, Inc. ("Dacrie") and Raul Machuca ("Machuca") are credit service/credit repair organizations as defined by state and federal law. Plaintiffs are consumers as defined by state and federal law.  Defendants induced Plaintiffs into entering an agreement with Plaintiffs by promising to clear up negative marks on Plaintiffs' credit.  After almost 3 years, Defendants have failed to clear up negative marks on Plaintiffs' credit.  Additionally, Defendants collected fees for this service prior to

1

completion of the service.  Finally, Defendants told Plaintiffs to quit paying for any credit cards that they did not intend to keep which, resulted in Plaintiff Luke Owens-Bragg having a default judgment rendered against him.

### Jurisdiction and Venue

3.      Jurisdiction of this Court attains pursuant to 15U.S.C.§1679, 28U.S.C.§§1331 and 1337(a), and the doctrine of pendant jurisdiction for the TCSOA, DTPA and Texas Common Law claims pursuant to 28U.S.C.§1367.

4.      Venue in the Western District of Texas is proper under 28U.S.C.§1391(b)-(c) because the acts and transactions occurred here and the Defendants transact business here.

### Parties

5.      Plaintiffs are citizens of the State of Texas.  Plaintiffs are "consumers" as defined by 15 U.S.C.§1679, Tex. Bus. & Com. Code § 17.45, and Tex. Fin. Code § 393.001.

6.      Defendant, Dacrie, Inc. is a Texas Corporation engaged in the business of improving consumers' credit records in the Western District of Texas.  Defendant uses an instrumentality of interstate commerce or the mails to sell, provide, or perform this service, in return for the payment of money or other valuable consideration.  Defendant is a "Credit Repair Organization" or a "Credit Service Organization" as defined by 15 U.S.C. § 1679 and Tex. Fin. Code § 393.001.  Dacrie may be served with process by serving its agent for service Raul Machuca at 159 Marlena Drive, San Antonio, Texas 78213.

7.      Defendant, Raul Machuca is an individual engaged in the business of improving consumers' credit records in the Western District of Texas. Defendant uses an instrumentality of interstate commerce or the mails to sell, provide, or perform this service, in return for the payment of money or other valuable consideration. Defendant is a "Credit Repair Organization" or a "Credit Service Organization" as defined by 15 U.S.C. § 1679 and Tex. Fin. Code § 393.001. Defendant is also a "Credit Repair Organization Representative" as defined by Tex. Fin. Code § 393.301. Raul Machuca may be served with process at his place of employment 159 Marlena Drive, San Antonio, Texas 78213.

8.      Collectively, Raul Machuca and Dacrie will be referred to as "the Organization."

9.      Defendant, Western Surety Company ("Western") is a surety company engaged in the business of issuing surety bonds in the Western District of Texas. Western issued Raul Machuca and Dacrie's bond required by Tex. Fin. Code § 393.403. Western may be served with process by serving its agent for service CT Corporation System at 350 North St. Paul Street, Dallas, Texas 75201.

### Factual Allegations

10.      In late February or early March of 2003, Plaintiffs met with the Organization to discuss Plaintiffs financial situation. Plaintiffs told the Organization that they could not make their current credit card payments and that none of their debts were in dispute. For the purpose of inducing Plaintiffs into entering an agreement with the Organization, the Organization told Plaintiffs that the Organization could remove most or all the negative information from Plaintiffs credit record. Additionally, the Organization

3

told Plaintiffs that they should quit making payments on their outstanding credit card balances unless they intended to keep the cards. At no time did the Organization disclose to Plaintiffs that they may be sued if they discontinued paying on their credit cards.

11.    As a result of the Organization's representations, the Parties entered into a "Contract for Credit Consulting Services" on March 3, 2003. Plaintiffs complied with the terms of the contract, which included paying Defendants $6400 prior to completion of the contracted for service.    Additionally, as directed by the Organization, Plaintiffs quit making payments to their credit card creditors.  In June of 2004, Plaintiff Luke Owens-Bragg was sued by Citibank  for failure to make payments on the debt.  As directed by the Organization, Plaintiffs forwarded the lawsuit to the Organization.  The Organization took no action to defend the lawsuit nor did it tell Plaintiff to seek counsel, which resulted in Plaintiff's default.

12.    Over a three year period the only positive changes to Plaintiffs credit scores have resulted from Plaintiffs having not applied for additional credit and through the passage of time.

13.    The foregoing acts and omissions were undertaken on behalf of the Organization by their respective officers, agents, or employees acting at all times relevant hereto within the scope of that relationship.

14.    The Organization's foregoing acts and omissions were undertaken by each of them willfully, intentionally, knowingly and/or in gross disregard of Plaintiffs' rights.

15.    The Organization's foregoing acts and omissions were undertaken by each of them indiscriminately and persistently, as part of their regular and routine business, and without regard to or consideration of Plaintiffs' identity or rights.

4

16.     The Organization's foregoing acts and omissions caused Plaintiffs actual and mental anguish damages.

### First Claim for Relief

17.     Plaintiffs repeat, reallege and incorporate by reference the foregoing paragraphs.  The Organization's violations of the CROA include, but are not limited to the following:

a.  In violation of 15 U.S.C. § 1679b(a)(3), the Organization made untrue or misleading representation of the services of the credit repair organization:

   i.  By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
   ii.  By telling Plaintiffs to send all paperwork received from creditors to the Organization and that the paperwork would be dealt with by the Organization.
   iii.  By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

b.  In violation of 15 U.S.C. § 1679b(a)(4), the Organization engaged in an act, practice, or course of business that constituted or results in the commission of, or an attempt to commit, a fraud or deception on a person in connection with the offer or sale of the services of the credit repair organization:

   i.  By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
   ii.  By failing to tell Plaintiffs that they may be sued if they discontinue paying their credit card bills.
   iii.  By telling Plaintiffs to send all paperwork received from creditors to the Organization and that the paperwork would be dealt with by the Organization.
   iv.  By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

c.  In violation of 15 U.S.C. § 1679b(b), the Organization took payments from Plaintiffs in the amount of $6400 prior to services being completed.

5

d. In violation of 15 U.S.C. § 1679c(a)-(b), Defendants failed to provide Plaintiffs with the disclosures required by this section.

18.    These actions caused Plaintiffs actual damages including, but not limited to, extreme mental anguish and economic damages.

19.    The Organization's violations of the CROA render them jointly and severally liable to Plaintiffs for actual damages, punitive damages, costs of court, and reasonable attorney's fees.

**Second Claim for Relief**

20.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.  The Organization's violations of the TCSOA include, but are not limited to the following:

a. In violation of Tex. Fin. Code §393.305, the Organization engaged in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization:

  i. By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
  ii. By failing to tell Plaintiffs that they may be sued if they discontinue paying their credit card bills.
  iii. By telling Plaintiffs to send all paperwork received from creditors to the Organization and that the paperwork would be dealt with by the Organization.
  iv. By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

21.    These actions caused Plaintiffs actual damages including, but not limited to, extreme mental anguish and economic damages.

22.    Under Tex. Fin. Code Ann. § 393.503, the Organization's violations of the TCSOA render them jointly and severally liable to Plaintiffs for actual damages, punitive damages, costs of court, and reasonable attorney's fees.

6

23.    Pursuant to Tex. Finance Code § 393.504, all of these actions are actionable under the Texas Deceptive Trade Practice Act, Tex. Bus. & Com. Code § 17.01 et. seq., and Plaintiffs claim all remedies available under the DTPA for the Organization's TCSOA violations including but not limited to actual damages, treble damages, attorney's fees, and cost of court.

**Third Claim for Relief**

24.    Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.  The Organization's violations of the DTPA include, but are not limited to the following:

    a.  In violation of Tex. Bus. & Com. Code § 17.50(a)(1)(A), Tex. Bus. & Com. Code § 17.46(b)(12), and Tex. Bus. & Com. Code § 17.46(b)(24), the Organization used or employed a false, misleading, or deceptive act or practice:

        i.  By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
        ii.  By failing to tell Plaintiffs that they may be sued if they discontinue paying their credit card bills.
        iii.  By telling Plaintiffs to send all paperwork received from creditors to the Organization and that the paperwork would be dealt with by the Organization.
        iv.  By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

    b.  In violation of Tex. Bus. & Com. Code § 17.50(a)(3), the Organization used an unconscionable action or course of action by:

        i.  By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
        ii.  By failing to tell Plaintiffs that they may be sued if they discontinue paying their credit card bills.
        iii.  By failing to tell Plaintiffs to seek counsel when a credit card company sued them.

iv. By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

25.   These actions caused Plaintiffs actual damages including, but not limited to, extreme mental anguish and economic damages.

26.   The Organization's violations of the DTPA render them jointly and severally liable to Plaintiffs for treble damages, actual damages, attorney's fees, cost of court, and in the event a judgment is not satisfied within three months of the Court's rendering the judgment, Plaintiffs request the court appoint a receiver and revoke the Organizations' license or certificate authorizing it to engage in business in this state.

**Forth Claim for Relief**

27.   Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.  The Organization's violations of Texas Common Law include, but are not limited to:

a.   The Organization fraudulently induced Plaintiffs into entering the Contract with the Organization to Plaintiffs' detriment by:

i. By telling Plaintiffs that they could quit paying on their credit cards and the Organization would still be able to improve Plaintiffs' credit ratings.
ii. By failing to tell Plaintiffs that they may be sued if they discontinue paying their credit card bills.
iii. By telling Plaintiffs to send all paperwork received from creditors to the Organization and that the paperwork would be dealt with by the Organization.
iv. By telling Plaintiffs that the Organization would improve Plaintiffs' credit rating when the Organization knew that Plaintiffs were not disputing any of the charges on their credit report.

28.   These actions caused Plaintiffs actual damages including, but not limited to, extreme mental anguish and economic damages.

8

29.     The Organization's violations of Texas Common Law render them jointly and severally liable to Plaintiffs for costs of court and actual damages.

### Fifth Claim for Relief

30.     Plaintiffs repeat, reallege, and incorporate by reference the foregoing paragraphs.  Pursuant to Tex. Fin. Code. § 393.405, Plaintiffs bring suit against Western for damages caused by the Organization including actual damages, reasonable attorney's fees, and court costs awarded under Tex. Fin. Code § 393.503(a).

### Jury Demand

31.     Plaintiffs demand jury trial in this matter.

### Prayer for Relief

WHEREFORE, the Plaintiffs prays that this Court:

1.     Declares that the Organization's actions violate the CROA, TCSOA, DTPA and Texas Common law, and find all Defendant's jointly and severally liable for all damages.

2.     Enter judgment in favor of Plaintiffs and against the Organization for actual damages, mental anguish damages, statutory damages, punitive damages, treble damages, costs of court, prejudgment and post judgment interest, and reasonable attorneys' fees as provided by Federal and Texas law.

3.     Enter judgment in favor of Plaintiffs and against Western for the Organization's actual damages, reasonable attorney's fees, and court costs awarded under Tex. Fin. Code § 393.503(a).

4.     In the event Defendants do not pay the Court's judgment within 3 months of the Court rendering the judgment, Plaintiffs request the Court order a receivership of Defendants' property and revoke Defendants' licenses to conduct business in Texas.

5.     Grant such further relief as deemed just.

Dated: February ___, 2006

9

Ronald J. Smeberg
Ronald J. Smeberg, Attorney at Law, PLLC
11844 Bandera Road #725
Helotes, Texas 78023
TBN: 24033967
Tel: 832-605-6769
Fax: 210-695-6684

ATTORNEY FOR PLAINTIFFS